**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| John Horanzy, | No. CV-15-00298-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Vemma Nutrition Company, *et al.*, | |
| Defendants. | |

At issue is the Motion to Dismiss (Doc. 37, Vemma Mot.) filed by Defendant Vemma Nutrition Company, to which Plaintiff filed a Response (Doc. 40, Resp. to Vemma Mot.) and Defendant filed a Reply (Doc. 44, Vemma Reply). Also at issue is the Motion to Dismiss (Doc. 36, Boreyko Mot.) filed by Defendants Benson K. Boreyko and Yibing Wang, to which Plaintiff filed a Response (Doc. 42, Resp. to Boreyko Mot.) and Defendants filed a Reply (Doc. 43, Boreyko Reply). The Court finds these matters appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons that follow, the Court grants in part and denies in part Defendants' motions.

**I.     Background**

In the Class Action Complaint (Doc. 1, Compl.), Plaintiff alleges the following facts, which the Court takes as true to resolve the Motions to Dismiss. *See Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996).

Between 2008 and 2011, Plaintiff John Horanzy, a citizen of New York, purchased several packages of Vemma Mangosteen with Essential Minerals in both two-bottle and single serving packages. (Compl. ¶ 11.) Plaintiff paid $60 or $30 at the time of each purchase for the products, depending on which package he purchased. (Compl. ¶ 11.) In purchasing the products, Plaintiff alleges that he relied on statements found on the labeling and packaging as well as in online advertising that claimed that the product was "clinically studied" and "physician formulated." (Compl. ¶ 11.) Plaintiff additionally alleges that he relied on representations made by Defendants Vemma Nutrition Company, Benson K. Boreyko, and Yibing Wang as well as Defendants' distributors that the product could cure or alleviate certain diseases. (Compl. ¶ 11.)

The producer of the product, Defendant Vemma Nutrition Company, markets and sells a line of liquid health supplements—which includes the product Plaintiff purchased—and attributes the products' "effectiveness" to a Southeast Asian fruit called mangosteen. (Compl. ¶ 1.) Each of Defendants' products bears a seal reading "Vemma Formula Inside," guaranteeing the product contains a "clinically studied blend" of vitamins, minerals, mangosteen, aloe vera and green tea. (Compl. ¶ 18.) Defendants further claim that Vemma has "tested [the Vemma Formula] to the highest standard of clinical research." (Compl. ¶ 22.) These studies, Defendants claim, show that the Vemma Formula: (1) causes a "significant decrease in C-reactive protein levels" and an improvement in immune system function; (2) reduces C-reactive protein levels from a high to low risk range; (3) causes a lowering of C-reactive protein; (4) increases Oxygen Radical Absorbance Capacity (ORAC) blood levels for six hours after intake of the product; (5) increases vitamins and antioxidants in the blood; (6) "enhance[s] immunity"; (7) increases overall health status; (8) is highly bioavailable; (9) causes significant improvement in immune markers; (10) causes superior antioxidant absorption; and (11) helps strengthen the body's natural immune defense, enabling those ingesting the formula to maintain vitality and enhance quality of life. (Compl. ¶ 2.)

Plaintiff alleges the studies are self-funded and "highly flawed" and do not actually prove any of Defendants' claims. (Compl. ¶ 37.) Plaintiff further alleges that not only are Defendants' representations misleading because the studies are "biased, unreliable, and unsound," but also that other published research directly refutes all of Defendants' claims. (Compl. ¶ 39.) As such, Plaintiff alleges the claims are in fact blatant misrepresentations. (Compl. ¶ 37.) This allegation focuses on Defendants' representations that the formula found in each bottle was "clinically studied." (Compl. ¶¶ 18-22.) Plaintiff takes issue with Defendants' failure to use a Type I error rate adjustment to "control for statistical significance" that occurred by chance in the studies. (Compl. ¶ 40.) Plaintiff alleges that if Defendants had used such a rate adjustment, any result the studies produced supporting Defendants' claims would have been insignificant. (Compl. ¶ 40.) Without the results of Defendants' studies, no scientific research supports Defendants' claims about the effect of mangosteen. (Compl. ¶ 41.)

Plaintiff additionally alleges that the first study, the Immune Function Study, fails to prove any of Defendants' health claims because it contained a "small, non-representative group," did not control for the pre-existing differences in the group's C-reactive protein (CRP) levels, and misstated the high risk CRP range for the average consumer. (Compl. ¶¶ 48-51.) Plaintiff makes similar allegations about the second study, the Bioavailability Study, arguing that it too fails to prove Defendants' claims because the population size of the study was too small for Defendants to make any generalizations about the results. (Compl. ¶ 58.) Plaintiff not only raises issues with the validity of these studies, but also points to a number of published studies and magazine articles that state that no clinical data showing any benefit from mangosteen supplementation exists. (Compl. ¶¶ 65-69.) Accordingly, Plaintiff contends that Defendants knew about the lack of validity in the two studies and intentionally continued to use the studies to mislead consumers. (Compl. ¶ 37.)

The second prong of Plaintiff's claims rests on the marketing of Vemma Products through the use of claims that the products can mitigate, treat, cure or prevent specific

diseases or classes of diseases. (Compl. ¶ 70.) In particular, Plaintiff alleges that Defendants' independent distributors use consumer testimonials to make disease claims to sell Defendants' products. (Compl. ¶ 70.) Unlike a traditional business, Defendants use multi-level marketing to sell their products. This system makes use of a network of independent distributors to sell products to the market and to recruit additional "downline" distributors to sell products, for which the recruiting member earns a commission. (Compl. ¶¶ 93, 111.) Because of the independent nature of these distributors, Defendants do not provide any direct training, and most distributors do not have training in medicine or nutrition. (Compl. ¶ 79.) Defendants, however, do provide the distributors with marketing manuals to assist with selling the products. (Compl. ¶ 79.)

Although operating independently, Defendants allow and encourage distributors to use Defendants' corporate logos and provide a custom website and mobile application for distributors to use in their sales efforts. (Compl. ¶¶ 82, 87.) Defendants describe Vemma's relationship with their distributors as a "partnership," assuring potential recruits that they will not need to worry about issues such as "significant investment," "payroll/overhead," and "legal/liabilities." (Compl. ¶ 85.) Defendants' contract imposes a number of restrictions on their distributors, requiring that Defendants pre-approve any advertising that Defendants did not directly provide, as well as all social media and Internet advertising. (Compl. ¶¶ 81, 88.) While Defendants encourage the use of testimonials, the contract also expressly requires that Defendants preapprove the use of any testimonial. (Compl. ¶ 88.)

Plaintiff alleges that, despite these requirements and a Federal Trade Commission (FTC) injunction preventing the use of disease claims, Defendants encourage distributors to target those with a "health challenge" as potential clients. (Compl. ¶ 98.) Further, Defendants' distributor manual encourages the use of websites such as vmastories.com and vmatools.com. (Compl. ¶ 101.) Vmastories.com, in particular, is replete with consumer testimonials organized by the health conditions that the testimonial discusses. (Compl. ¶¶ 101-06.) Categories that a visitor might encounter include some of the

following: "cholesterol," "lower blood pressure" and "treat autism and ADD," among many others. (Compl. ¶ 102.) These consumer-written accounts credit Defendants' line of products for curing or lessening a variety of disease symptoms. (Compl. ¶¶ 102-06.) Defendants' distributors, including those listed by Defendants as "elite" distributors, routinely provide links to these websites through online marketing and social medial platforms, such as Facebook and Twitter. (Compl. ¶¶ 107-08, 116.) Additionally, some of these distributors use personal testimonials and health claims directly to sell the products. (Compl. ¶¶ 111-13.) Because of the prevalence of such health claims, and because so many of Defendants' top distributors use such tactics, Plaintiff alleges that Defendants either acquiesce and encourage such behavior, or should be on notice of such. (Compl. ¶ 121.)

On October 22, 2014, Plaintiff filed the Complaint in this action in the Northern District of New York against Vemma Nutrition Company, Benson K. Boreyko, and Yibing Wang, on behalf of himself and all others similarly situated. (Doc. 1.) That court ordered the case transferred to this Court on February 2, 2015. (Doc. 29.) In the Complaint, Plaintiff raises the following claims: (1) violation of the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. §§ 2301, *et seq.*; (2) violation of New York's Deceptive Acts or Practices Act, N.Y. Gen. Bus. Law § 349; (3) violation of New York's False Advertising Act, N.Y. Gen. Bus. Law § 350; (4) breach of express warranty; (5) unjust enrichment and common law restitution; (6) negligent misrepresentation; and (7) fraud through intentional misrepresentation and concealment of fact. Defendants now move to dismiss all of Plaintiff's claims.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must contain more

than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations [] it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When analyzing a complaint under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith*, 84 F.3d at 1217. However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits properly included in the complaint, and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998). The court may take judicial notice of facts "not subject to reasonable dispute" because they are either: "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that the court may take judicial notice of undisputed "matters of public record"). The court may disregard

allegations in a complaint that are contradicted by matters properly subject to judicial notice. *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Federal Rule of Civil Procedure 9(b) requires that, in alleging fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." This pleading standard also applies to claims for misrepresentation. *Arnold & Assocs., Inc. v. Misys Healthcare Sys.*, 275 F. Supp. 2d 1013, 1028 (D. Ariz. 2003) (citing *Wyatt v. Terhune*, 315 F.3d 1108, 1118 (9th Cir. 2003)). To meet the Rule 9(b) particularity requirement, a plaintiff "must include statements regarding the time, place, and nature of the alleged fraudulent activities," and "mere conclusory allegations of fraud are insufficient." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (*en banc*) (internal quotation omitted), *superseded by statute on other grounds*, Private Secs. Litig. Reform Act of 1995, Pub. Law 104-67 (codified at 15 U.S.C. § 78u-4 (1995)). Thus, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct alleged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Furthermore,

> a plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading.

*GlenFed*, 42 F.3d at 1548.

If the Court grants a Rule 12(b)(6) motion to dismiss but a defective complaint can be cured, a plaintiff is entitled to amend the complaint before the action is dismissed. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

## III.   Analysis

### A.   Article III Standing

To bring a judiciable lawsuit into Federal Court, Article III of the Constitution requires that one have "the core component of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To satisfy Article III's standing requirements, a plaintiff must

show that he suffered a "concrete and particularized" injury that is "fairly traceable to the challenged action of the defendant," and that a favorable decision would likely redress the injury. *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). In the complaint, the plaintiff must "alleg[e] specific facts sufficient" to establish standing. *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 821 (9th Cir. 2002). Accordingly, courts should dismiss a plaintiff's complaint if he has failed to provide facts sufficient to establish standing. *See, e.g., Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1123 (9th Cir. 2010).

Defendants challenge the second prong of Plaintiff's standing in this case, arguing that Plaintiff fails to allege facts to show that his injury is traceable to an action (or actions) by the Defendants. (Vemma Mot. at 12.) Defendants' argument breaks down into two parts. First, Defendants contend that Plaintiff cannot trace his initial purchase of Vemma Products directly to any of Defendants' representations about the product because Defendants did not make any of the alleged representations until after Plaintiff initially purchased the products. (Vemma Mot. at 13-14.) Second, Defendants argue that the additional misrepresentations that Plaintiff relied upon—*i.e.*, disease testimonials— are not the actions of Defendants, but rather independent distributors and customers. (Vemma Mot. at 14.) Thus, the contention is that Plaintiff cannot trace any injury resulting from these representations to Defendants.

### 1.    Defendants' Actions

In support of the argument that Plaintiff could not have relied on any of the alleged representations by Defendants until after 2008, Defendants attach a litany of evidence to its Motion to Dismiss. (Tengan Decl., Exs. B–C.) Defendants are correct that courts in this Circuit have acknowledged the possibility that a plaintiff may not have Article III standing in a case concerning false advertising when a plaintiff does not actually view the advertisement. *See Brazil v. Dole Food. Co.*, No. 12-CV-01831-LHK, 2013 WL 5312418, at *8 (N.D. Cal. Sept. 23, 2013). However, it is inappropriate for the Court to consider the veracity of Defendants' evidence at the motion to dismiss stage.

Instead, the Court may only consider any material in the Complaint, any attached exhibits, or matters that are properly judicially noticed. *See Mir*, 844 F.2d at 649. Plaintiff alleges that, prior to purchasing any Vemma Product, he saw and relied upon the very advertisements and labeling that Defendants claim did not exist at the time. (Compl. ¶¶ 2, 11, 18-36.) For the purpose of the motion to dismiss, Plaintiff's allegations are sufficient.

### 2.     Actions of Vemma Distributors and Customers

Vemma additionally argues that it is not liable for any action by a distributor. (Vemma Mot. at 14.) Generally, an employer is not liable for the acts of an independent contractor. *Sanabria v. Aguero-Borges*, 986 N.Y.S.2d 553, 553 (App. Div. 2014). The rationale behind absolving an employer of any liability is the "premise that one who employs an independent contractor has no right to control the manner in which the work is to be done." *Berger v. Dykstra*, 610 N.Y.S.2d 401, 402 (App. Div. 1994). Thus, one factor critical to making an agency determination is the level of "[c]ontrol of the method and means by which the work is to be done" by the alleged master. *Id.* Other factors include the method of compensation, the right to terminate the contract, and the obligation to provide supplies and materials. *Szabados v. Quinn*, 548 N.Y.S.2d 442, 443 (App. Div. 1989). Although the factfinder should consider the presence of a contract designating a party as an independent contractor, the presence of such a contract is not dispositive to a determination on the issue. *Sanabria*, 986 N.Y.S.2d at 553.

Some of Plaintiff's allegations weigh in favor of a finding that the distributors are independent contractors. Vemma does not set the distributors' working hours or sales goals. Distributors may sell the products where they want, when they want, to whom they want, and at what price they want. Further, Vemma's distributor contract specifies that each distributor is an independent contractor rather than an employee.[1] (Vemma Reply at 15; Doc. 17-3.) On the other hand, each distributor receives a Vemma Distributor Manual

---

[1] As the distributor contract is "incorporated by reference" into the Complaint, the Court may consider the contents of the document for the purposes of the Motion to Dismiss. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

that encourages the use of websites compiling Vemma testimonials.[2] (Compl ¶¶ 96-101.) Vemma also provides the distributors with Vemma branded mobile and web based applications to aid in selling the products. Perhaps most telling, Vemma's contract requires that every distributor obtain pre-approval from Vemma prior to using any piece of advertising, including testimonials. (Compl. ¶ 88.)

Vemma argues that these rights confer upon them a mere supervisory power and do not support the inference that the distributors are Vemma's agents. (Vemma Reply at 9.) In support, Vemma points to a litany of cases where similar supervisory power did not create a question of fact regarding an agency relationship. (Vemma Reply at 9.) However, in none of these cases did the defendant have supervisory power over the acts directly at issue, and the agency determination was only relevant to employment law claims. *See Murray v. Principal Fin. Grp., Inc.*, 613 F.3d 943 (9th Cir. 2010) (Title VII claim); *Weary v. Cochran*, 377 F.3d 522 (6th Cir. 2004) (Age Discrimination in Employment Act (ADEA) claim); *Schwieger v. Farm Bureau Ins. Co. of* NE, 207 F.3d 480 (8th Cir. 2000) (Title VII claim); *Oestman v. Nat'l Farmers Union Ins. Co.*, 958 F.2d 303 (10th Cir 1992) (ADEA claim); *Hennighan v. Insphere Ins. Solutions, Inc.*, 38 F. Supp. 3d 1083 (N.D. Cal. 2014) (state law employment claims).

Plaintiff's allegations in this case are not merely that Vemma should be liable for one outlying act of a distributor, but rather that Vemma has systematically sanctioned the use of illegal sales tactics. Vemma cannot escape potential liability for particular advertising tactics if Vemma's contract with its distributors explicitly requires that distributors clear any advertising with Vemma before using it. Due to the scale of Plaintiff's allegations, at least two possibilities exist: (1) Vemma directly authorized the

---

[2] Plaintiff alleges that distributors Tom and Bethany Alkazin developed the original distributor manual with the encouragement and support of Vemma. (Compl. ¶ 96). Vemma then incorporated the manual into a Vemma Action Plan, which Plaintiff alleges is virtually identical to the Alkazin manual. (Compl. ¶¶ 97-98.) Although Vemma argues that Plaintiff conflates the Alkazin manual and Vemma's actual distributor manual, (Vemma Reply at 10), the Court construes Plaintiff's allegations as true and treats the manuals as identical for the purpose of the Motion to Dismiss. *See Smith*, 84 F.3d at 1217.

use of the health and disease testimonials by their distributors; or (2) Vemma has looked the other way while their distributors make these claims. Neither is sufficient to shield Vemma from potential liability for those claims. Thus, Plaintiff sufficiently pleads facts to infer an agency relationship between Vemma and its distributors in the context of Plaintiff's claims against Vemma.

Accordingly, Defendants' motion to dismiss Plaintiff's Complaint in its entirety for failure to satisfy Article III standing requirements is denied.

### B. Preemption of State Law Claims

The Federal Food, Drug and Cosmetic Act (FDCA), 12 U.S.C. 301 *et seq*., as amended by the Nutrition Labeling and Education Act of 1990 (NLEA), grants power to the Food and Drug Administration (FDA) to regulate the labeling of foods and dietary supplements. 21 U.S.C. § 343. In particular, the NLEA imposes the following requirements on those making representations about dietary supplements, such as those allegedly made by the Defendants:

> A statement . . . may be made if—(A) the statement . . . describes the role of a nutrient or dietary ingredient intended to affect the structure or functions in humans, characterizes the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function, or describes general well-being from consumption of a nutrient or dietary ingredient, (B) the manufacturer of the dietary supplement has substantiation that such statement is truthful and not misleading, and (C) the statement contains, prominently displayed in boldface type, the following: "This statement has not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease."

21 U.S.C. § 343(r)(6). In addition to this regulation, the Act also contains an express preemption provision that prevents individual states from imposing any requirement for the labeling of a structure/function claim that is not identical to the requirements of Section 343(r). 21 U.S.C. § 343-1(a)(5). Thus, if a state law "impose[s] more or inconsistent burdens on manufacturers than the burdens imposed by the FDCA," federal law preempts the state law claim. *Gallagher v. Bayer AG*, No. 14-cv-04601-WHO, 2015 WL 1056480, at *4 (N.D. Cal. Mar. 10, 2015). However, if a plaintiff's claims would not impose additional requirements, but only impose liability in line with the NLEA, federal

law does not preempt the claims. *Id.* Accordingly, federal law does not preempt an allegation under state law that a structure/function claim is false or misleading.[3] *Id.* at *7. The party asserting that a state law claim is preempted by federal law bears the burden of establishing preemption. *Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514, 1526 n.6 (9th Cir. 1995).

Defendants point to *Trujillo v. Walgreen Co.*, No. 13 CV 1852, 2013 WL 4047717 (N.D. Ill. Aug. 9, 2013), as the case most comparable to Plaintiff's allegations. (Vemma Mot. at 7; Vemma Reply at 3.) At issue in *Trujillo* was a representation on a dietary supplement that "Vitamin E naturally contributes to cardiovascular health." *Trujillo*, 2013 WL 4047717 at *1. Defendants argue that the *Trujillo* court found any state law claims to be preempted because the plaintiff in that case could not plausibly argue that there was no scientific substantiation for the dietary supplement claim. (Vemma Mot. at 7.) However, in that case, the plaintiff could not make that argument plausibly because she "pled herself out of [c]ourt" by acknowledging and even citing scientific support for the allegedly false representations in her complaint. *Id.* at *3. Further, the plaintiff's allegations in *Trujillo* were not necessarily inconsistent with the representation made about heart health.[4] *Id.* at *2.

In contrast, Plaintiff in this case maintains that clinical research supports a finding that Defendants' claims cannot possibly be true. (Compl. ¶¶ 65-69.) Unlike *Trujillo*, Plaintiff has not acknowledged that some research supports Defendants' claims, but instead alleges that the entire universe of research refutes those claims. Additionally, Plaintiff alleges that the substantiation upon which Defendants rely is not substantiation

---

[3] Defendants argue that the *Gallagher* court's preemption analysis supports Defendants' argument that the NLEA should preempt Plaintiff's claims, (Vemma Reply at 4); however, the court in *Gallagher* preempted the plaintiff's claim that the defendant's statements were disease claims, as the statements were clearly structure/function statements. *Gallagher*, 2015 WL 1056480 at *6-7. Not preempted was the plaintiff's allegation that the structure/disease statement was literally false. *Id.* at *8-9.

[4] The plaintiff's argument in *Trujillo* focused on the fact that studies showed that Vitamin E has little impact on cardiovascular *disease* events; however, that did not lead to an inference that a claim that Vitamin E supports heart *health* was false. *Trujillo*, 2013 WL 4047717 at *2.

at all and does not support Defendants' representations. (Compl. ¶¶ 37-59.) Thus, it is unclear how Plaintiff's state law claims would impose any requirements other than what the Act already requires. Plaintiff's allegations merely suggest that Defendants have no substantiation and that the representations are entirely false. Whether the scientific evidence actually supports Plaintiff's allegations is a factual issue inappropriate for decision at the motion to dismiss stage. At this point, Defendants have not met their burden to show that Plaintiff's claims are preempted.

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's state law claims on preemption grounds.

## C.   Count I:  Magnuson-Moss Warranty Act

Vemma requests that the Court dismiss Plaintiff's Magnuson Moss Warranty Act ("MMWA") claims because the statements found on Vemma products do not assert that the products are either defect free or will meet a specified level of performance over a specified period of time. (Vemma Mot. at 4.) Vemma further argues that even if the statement that the products "increase ORAC blood levels for 6 hours after intake" is a written warranty for the purpose of the Act, Plaintiff has not pled facts sufficient to plausibly show that this is false. (Vemma Reply at 3.)

The MMWA applies to warranties that specify that a product is either (1) defect free or (2) will meet a specified level of performance over a specified period of time. 15 U.S.C. § 2301(6)(A). A mere product description, however, does not constitute a written warranty under the MMWA. *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1004 (N.D. Cal. 2012) (finding that the labeling "All Natural" is not a written warranty). Thus, a written warranty must specify that the product is either defect free or will perform over a specified period of time to fall under the scope of the Act. *See Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 898 (C.D. Cal. 2013).

Vemma's alleged representation that the products would "increase[] ORAC blood levels for 6 hours after intake" is a guarantee that promises a specified level of performance—increased ORAC levels—over a period of time—six hours. Thus, this

claim fits within the MMWA. Plaintiff, however, seemingly argues that Vemma's representation that the products are "clinically proven" is inextricably linked to Vemma's claim about ORAC levels. (Compl. ¶ 136; Resp. to Vemma Mot. at 15.) Plaintiff essentially contends that Vemma has made two separate false allegations, both of which should fall under the MMWA: 1) that the products will increase ORAC levels over six hours; and 2) that clinical proof shows that the products increase ORAC levels over six hours. These, however, are separate warranties for the purpose of examining Plaintiff's MMWA claim. The representation that clinical proof exists guarantees neither "a specified level of performance," nor a period of time that performance would occur. Instead, this is a product description—like "All Natural"—indicating that the product was indeed studied. Thus, Plaintiff may not pursue a claim under the MMWA that Vemma's representation that the products were studied was false.

Turning to the sufficiency of Plaintiff's factual allegations, Plaintiff alleges that "the consensus of published research confirms that [the increase in ORAC level for 6 hours is] false." (Compl. ¶ 136.) However, this barebones allegation does not move the claim to a level of plausibility. While Plaintiff does point to established research by the United States Department of Agriculture (USDA), these studies do not address heightened ORAC levels. Plaintiff alleges that because the USDA "has established that ORAC values have absolutely no relation to human health and a manufacturer's use of such claims is highly misleading," any of Vemma's representations concerning ORAC levels are false. (Compl. ¶ 36.) While this could be probative to a determination that a high ORAC level has no relation to health, it could not plausibly prove that Vemma's products do not actually raise ORAC levels for six hours. Plaintiff reiterates similar allegations throughout the Complaint, claiming that ORAC values do not correlate to beneficial health effects. (Compl. ¶¶ 60-64.) Plaintiff also alleges that the USDA removed an ORAC database from its website because companies were abusing the database to suggest that high ORAC values supported health claims. (Compl. ¶ 62.) Again, even if true, these allegations do not plausibly show that Vemma's representation

is false. In fact, none of the research cited by Plaintiff in the Complaint addresses whether Vemma's products actually raise or do not raise ORAC levels.

Plaintiff goes on to attack the validity of Vemma's Bioavailability Study, which Vemma used to support claims about an increase in ORAC values. (Compl. ¶¶ 56-59.) Plaintiff alleges that the study was "fundamentally flawed" because it failed to use an adequate sample size and disregarded inadequate samples. (Compl. ¶ 59.) Plaintiff's allegation, if true, would prove too much. While Plaintiff indicates that several participants in the study showed no results, his allegations also support the fact that some participants did produce results. At best, Plaintiff has alleged facts sufficient to show that no conclusive evidence exists to prove either the truth or the falsity of the representation that Vemma's products increase ORAC levels for six hours. Plaintiff's allegations are insufficient to state a claim. Accordingly, the Court dismisses Plaintiff's MMWA claim. Because Plaintiff may be able to cure the defects in this claim by amendment, the Court dismisses the claim without prejudice. *See Lopez*, 203 F.3d at 1130.

### D.    Count IV:  Breach of Express Warranty

Vemma requests that the Court dismiss Plaintiff's breach of express warranty claim for failure to state a claim because privity is required in such a claim under New York law. The case law cited by Plaintiff and Vemma on this issue is conflicting. In support of the Motion to Dismiss, Vemma cites to *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274 (S.D.N.Y 2014), and *Ebin v. Kangadis Food Inc.*, No. 13 CIV 2311 JSR, 2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013). Interpreting New York law, the court in both cases dismissed a breach of express warranty claim, stating that privity is required when a plaintiff pleads only economic injury. *Koenig,* 995 F. Supp. 2d at 290; *Ebin*, 2013 WL 6504547 at *6. In opposition, Plaintiff points to *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467 (S.D.N.Y. 2014). In *Goldemberg*, which the court decided two months after *Koenig*, the court ruled that a purchaser could bring a breach of express warranty claim against a product manufacturer from whom the buyer did not directly purchase the product. *Goldemberg*, 8 F. Supp. 3d at 482. Specifically, the court

pointed to the fact that an express warranty may include representations made in the manufacturer's ads or sales material that a buyer might rely on. *Id.*

Vemma attempts to distinguish Plaintiff's contentions, arguing that New York's Uniform Commercial Code (UCC) superseded *Randy Knitwear, Inc. v. American Cyanamid Co.*, 181 N.E.2d 399 (N.Y. 1962), a case upon which *Goldemberg* relies. (Vemma Reply at 7); *see Ebin*, 2013 WL 6504547 at *6. Vemma is correct that some cases interpreting New York law have indicated that New York's implementation of the UCC supersedes *Randy Knitwear. See, e.g.*, *Koenig*, 995 F. Supp. 2d at 290; *Ebin,* 2013 WL 6504547 at *6. However, this Court is not persuaded by Vemma's argument for two reasons. First, recent cases interpreting New York law—including one Plaintiff does not cite—have allowed breach of express warranty claims to move forward despite a lack of privity between the plaintiff and the defendant. *See, e.g.*, *Weisblum v. Prophase Labs, Inc.*, No. 14-CV-3587, 2015 WL 738112, at *10 (S.D.N.Y. Feb. 20, 2015); *Goldemberg*, 8 F. Supp. 3d at 482. Secondly, an annotation to the particular statute that Plaintiff cites in support of its argument indicates that "[i]n no way is the Code intended to limit the . . . expansion of the manufacturer's liability as in *Randy Knitwear v. American Cyanamid Co.*, 11 N.Y.2d 5, 181 N.E.2d 399 (1962)." N.Y. U.C.C. § 2-318 New York annots. Thus, it appears privity is not required for Plaintiff to state a claim for breach of express warranty under New York law.

Accordingly, the Court denies Vemma's motion to dismiss Plaintiff's claim for breach of express warranty.

### E.    Count V:  Unjust Enrichment

Next, Vemma moves to dismiss Plaintiff's unjust enrichment claim, arguing that the claim duplicates Plaintiff's false advertising, breach of warranty, and misrepresentation claims. Thus, Vemma argues that New York law bars the unjust enrichment claim. (Vemma Mot. at 11.)

Under New York law, a plaintiff stating a claim for unjust enrichment must allege that "'(1) the defendant was enriched, (2) at the expense of the plaintiff, and (3) . . . it

would be inequitable to permit the defendant to retain that which is claimed by the plaintiff.'" *Koenig*, 995 F. Supp. 2d at 290 (quoting *Baron v. Pfizer, Inc.*, 840 N.Y.S.2d 445, 448 (App. Div. 2007)). However, "an unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verzion N.Y., Inc.*, 967 N.E.2d 1177, 1186 (N.Y. 2012). Accordingly, in New York, an unjust enrichment claim is available "only in unusual situations when . . . the defendant has not breached a contract nor committed a recognized tort" but it would be equitable for the defendant to repay the benefit received. *Id.*

Here, Plaintiff alleges that he purchased Vemma's product on the basis of Vemma's representations about the results of clinical studies and the product's ability to cure or aid diseases. (Compl. ¶ 11.) He further alleges that Vemma retained the benefits of those purchases. (Compl. ¶ 180.) To the extent that Plaintiff's unjust enrichment claim depends on Vemma's representations about its clinical studies and the efficacy of the products, the unjust enrichment claim merely duplicates Plaintiff's other claims. Should those claims later fail, Plaintiff's unjust enrichment claim cannot correct the defect. *See Koenig*, 995 F. Supp. 2d at 291. Also at issue are the Vemma distributors' representations that the products can aid or cure diseases. Should a factfinder find Vemma liable for those representations, then Plaintiff's unjust enrichment claim is duplicative and again fails. However, if Vemma is not liable for the actions of the distributors, a factfinder may find that it would be inequitable under a theory of unjust enrichment for Vemma to retain revenue gained from the sale of Vemma products to the public using allegedly false representations, even if Vemma itself is not responsible for those representations. In that instance, Plaintiff's unjust enrichment claim would not be duplicative of Plaintiff's other claims.

Accordingly, Vemma's motion to dismiss Plaintiff's unjust enrichment claim is granted in part and denied in part. Plaintiff's claim survives only to the extent that Vemma is not found liable for the representations of its distributors.

### F.      Count VI: Negligent Misrepresentation

Vemma moves to dismiss Plaintiff's negligent misrepresentation claim for failure to state a claim. (Vemma Mot. at 10.) Defendants contend that Plaintiff fails to allege sufficient facts to establish a special relationship under New York law. The Court agrees.

A plaintiff bringing a claim for negligent misrepresentation "must show either privity of contract between the plaintiff and the defendant or a relationship 'so close as to approach that of privity.'" *Sykes v. RFD Third Ave. 1 Assocs., LLC*, 938 N.E.2d 325, 372 (N.Y. 2010) (citations omitted). A "buyer-seller relationship" between two parties is typically not enough to "entail the degree of trust" for a negligent misrepresentation claim. *See Accusystems, Inc. v. Honeywell Info. Sys., Inc.*, 580 F. Supp. 474, 481 (S.D.N.Y. 1984). To establish a special relationship short of privity, the defendant must have been aware that the misrepresented material would be used for a particular purpose or purposes "in the furtherance of which a known party or parties [were] intended to rely," and there must have been conduct on behalf of the defendant linking them to that party or parties, evincing an "understanding of that party or parties' reliance." *Credit Alliance Corp. v. Arthur Andersen & Co.*, 483 N.E.2d 110, 118 (N.Y. 1985). Merely knowing that *some* party, or a party from a particular class, might rely on a misrepresentation is not sufficient to satisfy the test. *Sykes*, 938 N.E.2d at 373 ("The words 'known party or parties' . . . mean what they say."); *see also Westpac Banking Corp v. Deschamps*, 484 N.E.2d 1351, 1352-53 (N.Y. 1985) (finding that the defendant's knowledge of a class of "potential bridge lenders" did not imply that it knew the particular lender would rely).

Plaintiff in this case has not alleged any facts to indicate that Vemma had any knowledge of his existence or the particular likelihood that Plaintiff would rely on any representations by Vemma. At best, Plaintiff has merely alleged that Vemma made representations that it knew *some* party might rely upon. Further, even if Vemma may be held liable for the actions of its distributors, Plaintiff has still not pled sufficient details to establish the relationship necessary to bring a claim of negligent misrepresentation. In the

Complaint, Plaintiff merely alleges that he "purchased the products in person from one of Defendants' employees in New York." (Compl. ¶ 11.) These allegations do not lead to any inference that this was anything more than an arm's length, buyer-seller relationship. *See Accusystems, Inc.*, 580 F. Supp. at 481; *Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 779 (S.D.N.Y. 2011). Accordingly, these allegations are insufficient to bring a negligent misrepresentation claim because Plaintiff fails to plead facts to establish a special relationship with Vemma.

Accordingly, the Court grants Vemma's motion to dismiss Plaintiff's claim of negligent misrepresentation. The Court dismisses Plaintiff's claim without prejudice. *See Lopez*, 203 F.3d at 1130.

### G.     Counts VI-VII:  Negligent Misrepresentation and Fraud

In the alternative, Vemma moves for the dismissal of Plaintiff's negligent misrepresentation claim, as well as Plaintiff's fraud claim, for failure to satisfy the Rule 9(b) pleading standard. (Vemma Mot. at 3.) The pleading standard under Rule 9(b) for both claims is identical. *See Arnold & Assocs., Inc.*, 275 F. Supp. 2d at 1028. Courts have dismissed fraud claims under Rule 9(b) when a plaintiff fails to specify what the contents of an advertisement specifically stated, when he was "exposed to them," and "which ones he found material." *See, e.g., Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).

Again, the Court finds it necessary to distinguish between alleged representations Vemma made directly and those alleged representations made by Vemma's distributors and customers. In the first set of allegations, Plaintiff pleads the "who" by identifying Vemma Nutrition, Boreyko, and Dr. Wang. Plaintiff satisfies that "what" and "when" provisions by listing the Vemma Products at issue and the time period, 2008 to 2011, during which Plaintiff viewed the representations and purchased the products. (Compl. ¶¶ 1, 11.) Plaintiff alleges where he viewed the representations, stating that he viewed the products' labeling and Vemma's advertising efforts related to structure claims. (Compl. ¶¶ 11, 18-36.) Finally, Plaintiff satisfies the "how" prong by alleging that he relied on

Vemma's representations that the products were both "clinically studied" and "physician formulated," as well as eleven claims that the products would assist with a number of bodily functions and structures. (Compl. ¶¶ 11, 18-28.) Thus, the Complaint satisfies Rule 9(b) as to these allegations.

However, turning to Plaintiff's allegations about representations in the form of testimonials that the Vemma products cure or alleviate diseases, Plaintiff does not allege facts sufficient to meet the Rule 9(b) standard. In the Complaint, Plaintiff merely alleges that he "read Defendants' representations making health claims concerning the products online, such as that the products could cure or alleviate diseases." (Compl ¶ 11.) Plaintiff details an alleged scheme by Vemma to have its distributors target clients using testimonials and claims about the treatment of diseases. (Compl. ¶¶ 91-121.) Plaintiff also alleges that a number of websites contain a litany of allegedly false testimonials about the Vemma Products' ability to cure and alleviate diseases and that Vemma distributors direct customers to these websites. (Compl. ¶¶ 102-09, 116-20.) Although Plaintiff may have alleged the "what" and "when," he has not provided the "who," "where," or "how" necessary to satisfy Rule 9(b). Plaintiff identifies a universe of websites containing testimonials, yet he does not allege facts as to which of these websites he visited, which testimonials he read, or which he found useful in deciding to buy the product. He does not allege that Vemma or the distributor actually targeted him using claims about disease alleviation or that Vemma or a distributor actually directed him to a website containing testimonials. Instead of operating as a factual summary of the alleged wrongs by the Vemma that caused Plaintiff's injury, Plaintiff's Complaint operates more like a diatribe detailing every alleged wrong that Vemma ever committed. To the extent that Plaintiff's fraud and negligent misrepresentation claims rely on alleged disease claims by Vemma, Plaintiff fails to plead his claims with specificity.

Accordingly Vemma's motion to dismiss Plaintiff's claims for fraud and negligent misrepresentation is granted in part and denied in part. The Court dismisses without

prejudice Plaintiff's fraud claim based on disease prevention representations. *See Lopez*, 203 F.3d at 1130.

### H.   Claims Against Boreyko

#### 1.   Liability as Alter Ego to Vemma

In the alternative to Plaintiff's claims against Vemma, Plaintiff seeks to hold Defendant Boreyko individually liable for Vemma's actions on an alter ego basis.

When a court transfers a case, the transferee district court generally is "'obligated to apply the state law that would have been applied if there had been no change of venue.'" *Int'l Bus. Machs. Corp. v. Bajorek*, 191 F.3d 1033, 1036 (9th Cir. 1999) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964)). Thus, when a court transfers a case to another district court, "the choice of law rules of the transferor state apply." *Id.* at 1037. Because the Northern District of New York transferred this case, New York's choice of law rules apply.

When determining choice of law, New York courts use an "interest analysis" and apply "'the law of the jurisdiction having the greatest interest in the litigation.'" *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) (quoting *Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 248 N.E.2d 576, 582 (N.Y. 1969)). In cases where a plaintiff attempts to "pierce the corporate veil" of a corporation to hold an individual defendant liable, "[t]he law of the state of incorporation determines when the corporate form will be disregarded." *Id.*

Plaintiff in this matter seeks to pierce the corporate veil of Vemma and hold Boreyko liable as an alter ego. (Compl. ¶ 5.) Since Vemma "is an Arizona corporation with its principal place of business in Temp[e], Arizona," (Compl. ¶ 12), Arizona law applies in determining whether Plaintiff may hold Boreyko separately liable for the alleged actions of Vemma.

Arizona courts will disregard the corporate entity only if the plaintiff pleads facts sufficient to show that the corporation is the person's alter ego and that shedding the separate status is vital to preventing injustice or fraud. *Loiselle v. Cosas Mgmt. Grp.*,

*LLC*, 224 Ariz. 207, 214 (Ct. App. 2010). Relevant factors to consider in making a determination of an alter ego relationship include some of the following: "payment of salaries and expenses" by the owner, an "owners' making of interest-free loans to the corporation," "commingling of personal and corporate funds," "diversion of corporate property" for personal use, and the "observance of formalities at corporate meetings," among others. *Deutsche Credit Corp. v. Case Power & Equip. Co.*, 876 P.2d 1190, 1195-96 (Ariz. Ct. App. 1994). The plaintiff must additionally "show[] that observance of the corporate form would sanction a fraud." *Dietel v. Day*, 492 P.2d 455, 458 (Ariz. Ct. App. 1972). The mere fact that a plaintiff did not receive the benefit of their bargain, however, "'is not sufficient to justify the disregarding of the corporate entity.'" *Id.* (quoting *Ferrarell v. Robinson*, 465 P.2d 610, 613 (Ariz. Ct. App. 1970)). To allege alter ego liability, a plaintiff must "allege specific facts" to support an alter ego relationship and may not merely support the allegation with "conclusory statements regarding an alter ego relationship between individual and corporate defendants." *Barba v. Lee*, No. CV 09-1115-PHX-SRB, 2009 WL 8747368, at *5 (D. Ariz. Nov. 4, 2009).

In the Complaint, Plaintiff states the following about Defendant Boreyko to support his alter ego allegations: "Boreyko has been operating Vemma . . . as his alter ego," and "Boreyko totally dominates and controls Vemma . . . to such an extent that the independence of the entity is a sham." (Compl. ¶ 14.) At no time does Plaintiff make any allegation as to Boreyko failing to observe corporate formalities in operating Vemma, loaning interest free money to Vemma, using corporate property for personal use, or paying salaries directly. In short, Plaintiff does not make any non-conclusory statement that leads to the inference of an alter ego relationship between Boreyko and Vemma. Further, Plaintiff does not plead facts from which one could infer that shedding the corporate structure is necessary to prevent injustice or fraud. *See Loiselle*, 224 Ariz. at 214. Thus, Plaintiff cannot hold Boreyko liable as an alter ego of Defendant Vemma Nutrition Company on the basis of the allegations in the Complaint. The Court therefore

dismisses without prejudice Plaintiff's alter ego claims against Boreyko. *See Lopez*, 203 F.3d at 1130.

### 2. Boreyko's Individual Liability

Plaintiff additionally seeks to hold Defendant Boreyko liable on each of the counts for his individual actions. Borekyo moves to dismiss all counts for failure to state a claim. (Boreyko Mot. at 5-10.) The only statement that Plaintiff attributes directly to Boreyko individually is Boryeko's statement that he put "hundreds of thousands of dollars into clinical science to prove what Vemma can do for you and your family." (Compl. ¶ 24.) Plaintiff additionally seeks to hold Boreyko liable for Boreyko's alleged participation in the creation and distribution of Vemma Distributor Manuals, and the resulting use of disease testimonials. (Compl ¶ 97.) Plaintiff's MMWA (Count I) again fails because Boreyko's statement is not one that asserts that the Vemma products are either defect free or will meet a specified level of performance over a specified period of time, which the MMWA requires for relief. Plaintiff's claims for deceptive practices (Count II), false advertising (Count III), breach of express warranty (Count IV), fraud (Count VI), and negligent misrepresentation (Count VII) on the basis of Boreyko's alleged statement also fail because Plaintiff does not allege that Boreyko's statement is false or misleading or that Plaintiff viewed the statement.

The same claims fail as to any disease testimonials because Plaintiff does not adequately allege facts from which a factfinder could find Boreyko liable for the actions of Vemma distributors as Boreyko's agents. Outside of Plaintiff's general use of the terms "Defendants' agents" and "Defendants' distributors," (*see, e.g.*, Compl. ¶ 82), Plaintiff does not allege facts to show that the distributors are anything but Vemma's agents. Further, many of Plaintiff's own allegations support the finding that any agent/master relationship is between Vemma and the distributors. (*See* Compl. ¶ 87.) Plaintiff's fraud and negligent misrepresentation claims also fail as to disease testimonials because, as discussed above, Plaintiff does not plead facts with sufficiency to satisfy the pleading standard of Fed. R. Civ. P. 9(b). Plaintiff additionally does not plead

a special relationship with Boreyko, which is required to state a claim for negligent misrepresentation.

Finally, the Complaint lacks any allegation that Boreyko was personally enriched by Plaintiff's purchases of Vemma products. Although Plaintiff contends that Boreyko was enriched as Vemma's alter ego, (Resp. to Boreyko Mot. at 13), Plaintiff fails to allege sufficient facts to find that Boreyko is Vemma's alter ego. Thus, the Court must dismiss Plaintiff's unjust enrichment claim against Boreyko.

Accordingly, the Court grants Defendant Boreyko's motion to dismiss all claims against him individually. The Court dismisses all of Plaintiff's claims against Boreyko without prejudice. *See Lopez*, 203 F.3d at 1130.

## I.    Claims Against Wang

Although Plaintiff also brings all of his claims against Yibing Wang, Vemma's Chief Scientific Officer, Plaintiff fails to allege sufficient facts to support his MMWA, unjust enrichment and negligent misrepresentation claims against Wang. The Complaint contains allegations that Wang's name and image is used in Vemma's advertising to endorse its products, (Compl. ¶¶ 26-29), but those allegations do not give rise to liability on the part of Wang individually. The only statement attributed to Wang is that studies found on Vemma's website "give credence to the countless positive testimonials Vemma has received from customers." (Compl. ¶ 30.) This statement is not a warranty under the MMWA, because it does not promise that a product will meet a specified level of performance over a specified time, and the Court thus dismisses Count I against Wang. The Complaint also lacks any allegation that Wang was personally enriched by Plaintiff's purchases of Vemma's products, and thus Plaintiff's unjust enrichment claim (Count V) against Wang must also be dismissed. Likewise, the Complaint lacks any allegation of a special relationship between Plaintiff and Wang, which is fatal to Plaintiff's negligent misrepresentation claim (Count VI) against Wang under New York law.

With regard to Plaintiff's fraud claim against Wang, Defendants argue that Plaintiff offers no allegations "concerning his awareness of, much less his reliance on, the

statements he attributes to Wang prior to purchasing Vemma's products." (Boryeko Reply at 10.) As discussed above, the Court agrees that Plaintiff fails to detail which online testimonials he read and relied on to purchase Vemma products, and those testimonials thus do not form the basis of a fraud claim. But Plaintiff also alleges that Wang stated that Vemma studies ratified the online testimonials, and Plaintiff allegedly relied on representations that Vemma products were "clinically studied" to purchase them. Plaintiff's fraud claim (Count VII) against Wang thus satisfies the specificity requirements of Rule 9(b). Accordingly, the Court dismisses without prejudice Counts I, V, and VI against Wang; the remaining claims against Wang survive Defendants' motion to dismiss.

### J.      Applicable Statutes of Limitations

#### 1.      False Advertising and Deceptive Acts

A cause of action for an injury by deceptive acts or practices accrues when plaintiff suffers an injury from those actions. *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 453 (E.D.N.Y. 2007) (citing *Gaidon v. Guardian Life Inc. Co. of Am.*, 750 N.E.2d 1078, 1083 (N.Y. 2001)). To recover under Sections 349 and 350 of New York's General Business Law, the action must commence within three years of the date of accrual. *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 484 (E.D.N.Y. 2011); *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 453 (E.D.N.Y. 2007). When a plaintiff alleges more than one act of deception and false advertisement, he may recover for injuries subsequent to the original injury even if the original injury is time barred. *See Gristede's Foods, Inc.*, 532 F. Supp. 2d at 453. In an action which is commenced by filing, a claim asserted in the complaint is interposed . . . when the action is commenced." N.Y. C.P.L.R. § 203(c). Plaintiff in this case filed his Complaint on October 22, 2014. Accordingly, Plaintiff cannot recover for injuries under Sections 349 and 350 prior to October 22, 2011.

### 2.     Fraud

The statute of limitations for fraud claims under New York law is six years from the date the action accrues. *Fromer v. Yogel*, 50 F. Supp. 2d 227, 245 (S.D.N.Y. 1999). However, New York courts are typically cautious of fraud claims used by plaintiffs to circumvent a shorter statute of limitations applicable to other claims in the complaint. *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 450 (S.D.N.Y. 2014) (citing *Powers Mercantile Corp. v. Feinberg*, 490 N.Y.S.2d 190, 192 (1985)). The use of a fraud claim is not meant to be a means "to litigate [otherwise] stale claims." *Powers Mercantile Corp.*, 490 N.Y.S.2d at 192. Thus, when "allegations of fraud are only incidental to another cause of action, a plaintiff cannot invoke the fraud statute of limitations." *Fathi v. Pfizer Inc.*, No. 109841/06, 2009 WL 2950876, at*6 (N.Y. Sup. Ct. Aug. 31, 2009).

An action in fraud is incidental if: "(1) the fraud occurred separately from and subsequent to the injury forming the basis of the alternate claim; and (2) the injuries caused by the fraud are distinct from the injuries caused by the alternate claim." *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 545 (2d Cir. 1999). However, the mere fact that a claim of fraud requires additional proof does not allow invocation of the fraud statute of limitations. *Fathi*, 2009 WL 2950876 at *4 (explaining that additional allegation of *scienter* was insufficient to invoke fraud statute of limitations). Where the alleged fraud is merely "the means of accomplishing the breach and add[s] nothing to the causes of action" the six-year statute of limitations does not apply. *Powers Mercantile Corp.*, 490 N.Y.S.2d at 193 (quoting *Iandoli v. Asiatic Petrol. Corp.*, 395 N.Y.S.2d 15, 15 (App. Div. 1977)).

Here, Plaintiff's allegations that give rise to his claim of fraud are identical to those allegations that support his additional claims. Plaintiff does not allege that any alleged act of fraud committed by Defendants caused any injury in addition to the economic injuries that are traceable to Plaintiff's alternate claims. As a result, the statute of limitations for Plaintiff's fraud claim is limited by his other claims.

### 3.      Breach of Express Warranty and MMWA

In New York, the statute of limitations for breach of an express warranty is four years. *Woods v. Maytag Co.*, No 10-CV-0559, 2010 WL 4314313, at *2 (E.D.N.Y. Nov. 2, 2010) (citing N.Y. U.C.C. § 2-725). A claim pursuant to the MMWA is similarly limited to the same four year statute of limitations. *Statler*, 775 F. Supp. 2d at 481. Accordingly, Plaintiff may not recover under either claim for purchases prior to October 22, 2010.

### 4.      Unjust Enrichment

In New York, courts apply a six year statute of limitations period for unjust enrichment when the unjust enrichment claim arises out of facts identical to contractual claims. *Maya NY, LLC v. Hagler*, 965 N.Y.S.2d 475, 478 (App. Div. 2013). When a plaintiff pleads unjust enrichment in the alternative to claims under sections 349 and 350 of New York's General Business Law, courts have applied the six year statute of limitations to the plaintiff's unjust enrichment claim. *See, e.g., Jermyn v. Best Buy Store, L.P.*, 256 F.R.D. 418, 430 (S.D.N.Y. 2009). Accordingly, Plaintiff's claim for unjust enrichment is subject to a six year statute of limitations.

## IV.   Subject Matter Jurisdiction

Federal courts only have jurisdiction over a limited number of cases, and those cases typically involve either a controversy between citizens of different states ("diversity jurisdiction") or a question of federal law ("federal question jurisdiction"). *See* 28 U.S.C. §§ 1331, 1332. The Supreme Court has stated that a federal court must not disregard or evade the limits on its subject matter jurisdiction. *Owen Equip. & Erections Co. v. Kroger*, 437 U.S. 365, 374 (1978). Thus, a federal court is obligated to inquire into its subject matter jurisdiction in each case and to dismiss a case when subject matter jurisdiction is lacking. *See Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004); Fed. R. Civ. P. 12(h)(3). To proceed in federal court, a plaintiff must allege enough in the complaint for the court to conclude it has subject matter jurisdiction. *See*

Fed. R. Civ. P. 8(a); Charles Alan Wright & Arthur R. Miller, *5 Fed. Practice & Procedure* § 1206 (3d ed. 2014).

In the Complaint, Plaintiff alleges that the Court has both federal question and diversity jurisdiction over this matter. (Compl. ¶¶ 7, 8.) As discussed above, the Court is dismissing Plaintiff's MMWA claim—the only claim brought under federal law—but Plaintiff may amend that claim. If Plaintiff is unable to cure the claim's defects, the only remaining basis for this Court's subject matter jurisdiction is diversity of the parties.

The Class Action Fairness Act, 28 U.S.C. § 1332(d), provides that district courts have jurisdiction over class actions in which the amount in controversy exceeds $5 million and a member of the class of plaintiffs is a citizen of a different state than any defendant, subject to limitations on the total number of plaintiffs from a particular state. With regard to this Court's diversity jurisdiction over the claims of the putative class, Plaintiff alleges that the aggregate claims exceed $5 million, that Plaintiff is a citizen of New York, and that Defendant Vemma is a citizen of Arizona. (Compl. ¶¶ 8, 11, 12.) Because Plaintiff does not identify the state of citizenship of Defendants Boreyko and Wang, the Court cannot determine whether it has diversity jurisdiction over the claims of the putative class.

It appears in the Complaint that Plaintiff intends to bring claims both as an individual and as a member of the putative class. (Compl. ¶ 1 (Plaintiff "brings this action on behalf of himself and all others similarly situated"); ¶ 6 ("Plaintiff seeks relief in this action individually, and on behalf of similarly situated purchasers").) However, Plaintiff also does not allege that his individual claims would satisfy the individual amount in controversy requirement, $75,000. *See* 28 U.S.C. § 1332(a); *Freeman Invs., L.P. v. Pac. Life Ins. Co.*, 704 F.3d 1110, 1118 (9th Cir. 2013). The Court thus cannot conclude that it has subject matter jurisdiction over Plaintiff's individual claims, either. However, along with having the option to amend his MMWA claim, which could result in federal question jurisdiction, Plaintiff may also amend the Complaint with regard to the Court's diversity jurisdiction over this matter. *See Freeman*, 704 F.3d at 1118.

**V.     Conclusion**

The Court grants Vemma's Motion to Dismiss as to Counts I and VI of Plaintiff's Complaint for failure to state a claim for relief, but Plaintiff may amend these claims if Plaintiff can cure the defects identified in this order. The Court grants in part and denies in part Vemma's Motion to Dismiss Count V of the Complaint. Plaintiff may recover on Count V only to the extent that Defendants are not liable for the actions of their distributors. The Court also grants in part and denies in part Vemma's Motion to Dismiss Count VII for Plaintiff's failure to satisfy Rule 9(b)'s pleading requirements for fraud claims, and the Court grants Plaintiff leave to amend. The Court grants Boreyko's Motion to Dismiss Counts I-VII (all claims), and Wang's Motion to Dismiss Counts I, V, and VI. Additionally, Plaintiff's surviving claims are narrowed as follows. Plaintiff cannot obtain relief under N.Y. Gen. Bus. Law §§ 349-50 prior to October 22, 2011, and cannot obtain relief for breach of express warranty prior to October 22, 2010. Plaintiff's fraud claim is time-limited by these remaining claims. The Court denies Defendants' remaining grounds for dismissal. The Court also finds that the Complaint lacks sufficient allegations from which the Court can conclude that it has diversity jurisdiction over this matter.

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendant Vemma Nutrition Company's Motion to Dismiss (Doc. 37), as described herein.

**IT IS FURTHER ORDERED** granting in part and denying in part Defendants Benson K. Boreyko and Yibing Wang's Motion to Dismiss (Doc. 36), as described herein.

**IT IS FURTHER ORDERED** that Plaintiff shall file an Amended Complaint by August 14, 2015, but the amendment must comply with the provisions of this Order. The Court will not grant Plaintiff further leave to amend his current claims after Plaintiff files his Amended Complaint.

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** that if no Amended Complaint is timely filed, the Court will dismiss this action without further notice for lack of subject matter jurisdiction.

Dated this 30th day of July, 2015.

_____
Honorable John J. Tuchi
United States District Judge